## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES YANNA,

     Petitioner,                CASE NO. 5:07-CV-15078

                               HONORABLE JOHN CORBETT O'MEARA

v.                         UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

James Yanna, ("Petitioner"), confined at the Oaks Correctional Facility in Manistee, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316; first-degree home invasion, M.C.L.A. 750.110a(2); armed robbery, M.C.L.A. 750.529; carjacking, M.C.L.A. 750.529a; possession of burglary tools, M.C.L.A. 750.116; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted of the above charges following a jury trial in the Saginaw County Circuit Court.

The evidence presented at trial established that the victim, Thomas Groening, a 60-year-old watchmaker, clockmaker and jeweler lived alone in a house on Granger

1

Street in Saginaw, Michigan.  The victim worked at his brother's jewelry store in Frankenmuth repairing and restoring clocks and watches.  The victim was last seen alive on Thursday December 18, 2003, when he left the store at closing time, driving a dark green pick-up truck.

Over the next few days, the victim's relatives became concerned when they did not see or hear from him.  Family members drove by his home, noting that his truck was not there and assumed that he was not there either.  On Sunday, David Hovis, a relative, went to the house to check on the victim.  The victim's truck was still not there.  Hovis observed footprints in the snow leading to the back of the house and followed them to a window that had been boarded up and painted bright blue after a November break-in.  The paneling board that had been nailed to the window frame was on the ground as if it had been pried off and insulation, as well as the board, was laying on the ground.

After calling for the victim and receiving no response, Hovis went to a neighbor's house and called the police.  The police arrived, noted the broken boarded window and found the back door locked, but the front door uncharacteristically unlocked.  Upon entering the front door, officers observed the victim's body face down on the living room floor.  The victim was wearing a brown leather jacket.  Investigators noted a distinct footwear impression on back of the jacket.  The victim's pants pockets were turned inside out and were empty.  Police found no cash, no checks, no keys, and no valuables anywhere on the victim.  The victim's truck and the keys to the truck were missing.

The victim's truck was discovered on December 28, 2003 in a wooded area some

2

distance from the victim's home.  Because of snowfall in the area, police opined that the truck had been there at least a couple of days.  The truck was locked but the police were unable to find the keys.

An autopsy of victim revealed defensive wounds on his hands.  The victim suffered several injuries on his face and a laceration on the back of his head caused by some blunt object.  The victim also had an abrasion on his neck reflecting pressure on the neck causing a "strangulation kind of effect."  The medical examiner concluded that the cause of death was a combination of head injury and pressure on the neck.  The manner of death was homicide.  The appearance of the body indicated the victim had been dead since "the afternoon or late evening of December 18th."

Investigators called to the scene on the date the victim's body was found located and seized various items that appeared to be related to the crime.  Most importantly, police recovered a container of Dr. Scholl's footpowder only a few feet from the victim's body with a latent fingerprint on the side.  Police also recovered nails and vegetation with blue paint on the ground under the window where the break-in had taken place.  Lastly, the police discovered footwear impressions leading to and from the window, with one set going toward the drive where the victim's truck would have been parked.  The police also recovered footwear impressions at various locations and on various items inside the house, including from the back of the jacket worn by the victim.

Testimony at trial established that in November of 2003, the victim's house had previously been broken into, during which time a .22 caliber Colt pistol or revolver had

been stolen.  Around that same time period, the boyfriend of petitioner's mother noticed a .22 caliber pistol on petitioner's bed.

Laboratory comparisons of the footwear impressions revealed that the impression found on the back of the victim's jacket and on a piece of particle board and siding were all consistent with having been made by Nike Air Max athletic shoes.  This same Nike Air Max athletic shoe pattern was found by police in the driveway where a vehicle had apparently been parked.  The footprints appeared back and forth from the area of the broken window on the south side of the house.  The same footwear impressions appeared to go to where the back tailgate and the driver's side door would be for a vehicle parked face in toward the victim's garage.

Laboratory analysis of the Dr. Scholl's bottle for fingerprints revealed one latent print, which was subsequently identified as a match for petitioner's left index finger.  The Dr. Scholl's bottle also contained the victim's DNA.

Once the fingerprint was identified, a search warrant was obtained for the home where petitioner lived with his mother.  This home was only a few blocks from the victim's home.  Clothing, shoes, a pry bar or lug wrench, a hammer with blue paint on it, and three crack pipes were seized.

Analysis of the hammer which was recovered from petitioner's house revealed that the blue paint on it was consistent in color, chemical composition, and elemental composition with the blue paint that was found on the paneling board that had been pried from the window at the victim's home at the time of the break-in.  The paint from the

4

vegetation and nails found on the ground where the paneling had been pried off was also consistent with the paint on the hammer and on the paneling.

Petitioner had borrowed this hammer from his uncle a couple of months before the murder. The victim lived next door to petitioner's uncle and aunt, but petitioner's uncle never used the hammer at the victim's home, nor had the victim ever borrowed the hammer from petitioner's uncle.

On Thursday December 18th, petitioner visited some friends sometime after dark, between 7:30 and 9 p.m. Petitioner's friends noticed that he was driving a late model Chevy S-10 small pick-up truck on that date. The truck was a dark color, appeared to be black, and had a black tonneau cover over the truck bed, similar to the one on the victim's truck. Petitioner told both of his friends that the truck belonged to his cousin who loaned it to him for the weekend. However, when petitioner visited the same friends on the next day, he did not have the truck and his mother dropped him off. Petitioner's relatives later stated that none of petitioner's family members owned this type of a pick-up truck.

On that same date, December 18th, petitioner played video games with his friends. Petitioner's friends had known petitioner to own several pair of athletic shoes, Adidas and Nike's. But when petitioner played video games on December 18, 2003, he was not dressed in his usual jeans, t-shirt and athletic shoes. Instead, petitioner was wearing a polo shirt, dockers, and dress shoes.

Following his arrest, petitioner gave a statement to the police, in which he repeatedly denied ever being in the victim's house and stated he had never talked to the

victim although he lived next door to him for a couple of years.  Petitioner also informed the police that he only had one pair of shoes.

While incarcerated at the Buena Vista Corrections Center, petitioner told a fellow inmate named Justin Nelson that he had broken into a house on Granger Street where he saw lots of clocks and watches.  While "they" were inside the residence, petitioner told Nelson that the owner returned, that "they" panicked, the owner was hit with something hard, and that the owner's vehicle was taken.

In various telephone calls with relatives that he made from the jail, petitioner repeatedly changed his story to counter facts and information about the case that began to surface and incriminate him.   Petitioner originally told friends and relatives that he had never been inside the victim's home.  However, once petitioner's fingerprint was found on the bottle found near the victim's body inside the victim's home, petitioner informed various relatives that he suddenly recalled having stopped by the victim's home on one occasion to inquire about a truck that the victim had for sale.

Petitioner testified on his own behalf.  Petitioner presented an alibi defense, claiming that he was babysitting for his ten year old sister at the time the crime occurred. Petitioner's mother, Patricia Yanna, who had been called by the prosecution, also provided testimony in support of petitioner's alibi defense.

The defense also took the position, as early as *voir dire*, that although the jury would hear about petitioner's prior convictions, none of these convictions involved assaultive behavior.  In addition, the defense cross-examined several of petitioner's

6

friends about not knowing him to ever be violent.

Petitioner's conviction was affirmed on appeal. *People v. Yanna,* No. 258633

(Mich.Ct.App. March 28, 2006); *lv. den.* 477 Mich. 959 (2006).

Petitioner now seeks habeas relief on the following sixteen grounds.  For judicial

clarity, the Court will paraphrase the claims, rather than recite them verbatim:

(1)  Prior bad acts evidence was presented at trial,
(2) Evidence that petitioner was previously in jail was presented at trial,
(3) Evidence of petitioner's prior drug use was presented at trial,
(4) A prior consistent statement of witness Nelson was improperly used at trial,
(5) Facts not found by the jury were used in determining petitioner's sentence,
(6) There was insufficient evidence presented at trial that it was Petitioner who perpetrated the crimes,
(7)–(13) the prosecutor committed various acts of misconduct,
(14) trial counsel was ineffective in responding to the prosecutorial misconduct,
(15) trial counsel was ineffective in other respects, and
(16) an accumulation of errors rendered the trial unfair.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A.  Claims # 2, # 3, # 4, # 7, # 8, # 9, # 10, # 11, # 12, #13 and # 14. The procedurally defaulted claims.**

The Court will discuss petitioner's procedurally defaulted claims together for judicial clarity. The Court will also discuss petitioner's fourteenth claim alleging ineffective assistance of counsel, because it is interrelated with these claims.

Respondent contends that petitioner's second, third, fourth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth claims are procedurally defaulted because petitioner failed to object to these errors at trial.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to

8

show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his second, third, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth claims.  Because petitioner failed to object to these errors, the Michigan Court of Appeals reviewed the claims for plain error and finding none, affirmed petitioner's conviction. *See Yanna,* Slip. Op. at * 3-4, 7.  The fact that the Michigan Court of Appeals engaged in plain error review of these claims does not constitute a waiver of the state procedural default. *Girts v. Yanai,* 501 F. 3d 743, 755 (6th Cir. 2007)*; Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000).  Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claims for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir.

9

2001).  Petitioner's second, third, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth claims are procedurally defaulted.

Petitioner's fourth claim involving the admission of Justin Nelson's prior consistent statement was considered waived for appellate review by the Michigan Court of Appeals because petitioner had expressly stipulated to the admission of the transcript containing the prior consistent statement. *Yanna,* Slip. Op. at * 5.

With regard to petitioner's fourth claim, the Michigan Court of Appeals clearly indicated that by stipulating to the admission of the transcript containing Nelson's prior consistent statement, petitioner had waived appellate review of the issue.  Under Michigan law, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence.*" People v. Gonzalez*, 256 Mich. App. 212, 224; 663 N.W.2d 499 (2003).  Because the Michigan Court of Appeals relied on petitioner's admission of Nelson's prior consistent statements into evidence as waiving appellate review of petitioner's fourth claim, the issue is procedurally defaulted. *See McKissic v. Birkett,* 200 Fed. Appx. 463, 470-71 (6th Cir. 2006).

In his fourteenth claim, petitioner contends that his counsel was ineffective for failing to object to these errors.

Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Not just any deficiency in counsel's performance will excuse a procedural default, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

10

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

In the present case, petitioner did not timely file a motion to remand to the trial court for an evidentiary hearing on his ineffective assistance of counsel claims.

MCR 6.431(A)(2) provides, "If a claim of appeal has been filed, a motion for a new trial may only be filed in accordance with the procedure set forth in MCR 7.208(B) or the remand procedure set forth in MCR 7.211(C)(1)."

MCR 7.208(B)(1) states that:

"No later than 56 days after the commencement of the time for filing the defendant-appellant's brief as provided by MCR 7.212(A)(1)(a)(iii), the defendant may file in the trial court a motion for a new trial, for judgment of

11

acquittal, to withdraw a plea, or for resentencing."

MCR 7.211(C)(1) indicates:

"(a) Within the time provided for filing the appellant's brief, the appellant may move to remand to the trial court. The motion must identify an issue sought to be reviewed on appeal and show:

(i) that the issue is one that is of record and that must be initially decided by the trial court; or

(ii) that development of a factual record is required for appellate consideration of the issue.
A motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing."

Pursuant to MCR 7.212(A)(1)(a)(iii), an appellant must file a brief within 56 days after the claim of appeal is filed, the order granting leave is certified, or the transcript is filed with the trial court or tribunal, whichever comes later. *See Jackson v. Curtis,* No. 2008 WL 1808373, * 3 (E.D. Mich. April 21, 2008).

The docket sheet from petitioner's case in the Michigan Court of Appeals indicates that petitioner's claim of appeal was filed on October 19, 2004. The last of the transcripts were filed on April 7, 2005. Petitioner's appellate counsel filed his appellate brief on May 9, 2005. Petitioner filed his Supplemental *pro se* Rule 11 Brief and a motion to remand on June 27, 2005. [1] Pursuant to MCR 7.212(A)(1)(a)(iii), petitioner's

---

[1] This Court obtained much of this information from the Internet website for the Michigan Court of Appeals. Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice. *See United States ex. rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003). A federal district court is thus permitted to take judicial notice of another court's website. *See e.g. Graham v. Smith,* 292 F. Supp. 2d 153, 155, n. 2 (D. Me. 2003). In addition, a copy of petitioner's *pro se* motion to remand is included as part of this Court's Docket # 6-25.

12

motion to remand was due no later than June 3, 2005, some fifty six days after the last transcript was filed.  Because petitioner did not file his motion to remand within the fifty six day period for filing an appellate brief under MCR 7.212(A)(1)(a)(iii) or within fifty six days of the final transcript being prepared, petitioner's motion was untimely under MCR 7.208(B) and MCR 7.211(C)(1). *see People v. LaPlaunt,* 217 Mich. App. 733, 735-736; 552 N.W. 2d 692 (1996).  The Michigan Court of Appeals, in fact, ultimately denied petitioner's motion to remand. *People v. Yanna,* No. 258633 (Mich.Ct.App. August 11, 2005).

Because petitioner failed to present any evidence in a proper manner to the Michigan courts to support his allegation that his trial counsel had been ineffective in failing to object to these errors, petitioner is not entitled to an evidentiary hearing to further develop this claim in his habeas proceeding. *See Cooey v. Coyle,* 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(*quoting Massaro v. United States*, 538 U.S. 500, 505 (2003)).

"Moreover, experienced trial counsel learn that objections to each potentially

13

objectionable event could actually act to their party's detriment.  Learned counsel

therefore use objections in a tactical manner.  In light of this, any single failure to object

usually cannot be said to have been error unless the evidence sought is so prejudicial to a

client that failure to object essentially defaults the case to the state.  Otherwise, defense

counsel must so consistently fail to use objections, despite numerous and clear reasons

for doing so, that counsel's failure cannot reasonably have been said to have been part of

a trial strategy or tactical choice." *Lundgren v. Mitchell,* 440 F. 3d 754, 774 (6th Cir.

2006).

Petitioner has failed to show that his counsel did not have strategic or tactical

reasons for failing to object to these alleged errors, nor has he shown that any of these

alleged errors were so prejudicial that counsel's failure to object defaulted the case to the

state.  Because petitioner has presented nothing to this Court to overcome the

presumption that counsel's failure to object to these alleged errors was a reasonable

tactical decision or that a reasonable probability exists that objecting to those comments

would have changed the trial's outcome, petitioner has failed to establish cause to excuse

his default. *See Bae v. Peters,* 950 F. 2d 469, 480 (7th Cir. 1991).

Because petitioner has not demonstrated any cause for his procedural default, it is

unnecessary to reach the prejudice issue regarding these claims. *Smith*, 477 U.S. at 533;

*See also Isabell v. Curtis,* 36 Fed. Appx. 785, 788 (6th Cir. 2002); *Payne v.  Smith,* 207 F.

Supp. 2d 627, 638-39 (E.D. Mich. 2002).

Additionally, petitioner has not presented any new reliable evidence to support

14

any assertion of innocence which would allow this Court to consider these defaulted

errors as grounds for a writ of habeas corpus in spite of the procedural default.

Petitioner's sufficiency of evidence claim (Claim # 6, *infra*) is insufficient to invoke the

actual innocence exception to the procedural default doctrine. *See Malcum v. Burt,* 276

F. Supp. 2d 664, 677 (E.D. Mich. 2003).   Because petitioner has not presented any new

reliable evidence that he is innocent of these crimes, a miscarriage of justice will not

occur if the Court declined to review petitioner's second, third, fourth, seventh, eighth,

ninth, tenth, eleventh, twelfth, or thirteenth claims on the merits. *See Payne,* 207 F. Supp.

2d at 639.

Finally, assuming that petitioner had established cause for his default, he would

be unable to satisfy the prejudice prong of the exception to the procedural default rule,

because his claims would not entitle him to relief.   The cause and prejudice exception is

conjunctive, requiring proof of both cause and prejudice. *Terry v. Bock,* 208 F. Supp. 2d

780, 793 (E.D. Mich. 2002).   For the reasons stated by the Michigan Court of Appeals in

their decision affirming petitioner's conviction, petitioner has failed to show that his

claims have any merit.   Petitioner's claims are thus barred by procedural default and do

not warrant relief.

The Court will likewise reject petitioner's fourteenth claim, because petitioner has

failed to establish that counsel was ineffective for failing to object to these alleged errors.

**B.  Claim # 1.  The prior bad acts evidence claim.**

In his first claim, petitioner alleges that the trial court improperly admitted "prior

15

bad acts" or "other acts" evidence in violation of M.R.E. 404(b).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner is therefore not entitled to habeas relief on his first claim.

### C. Claim # 5. The sentencing claim.

Petitioner next claims that the trial court improperly scored his sentencing guidelines range by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or conceded to by petitioner.

In support of his claim, petitioner relies on the case of *Blakely v. Washington,* 542 U.S. 296 (2004), in which the U.S. Supreme Court has held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

The problem with petitioner's reliance on *Blakely* is that the case in *Blakely*

16

involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. See *People v. Drohan,* 475 Mich. 140, 160-61; 715 N.W. 2d 778 (2006); *People v. Claypool,* 470 Mich. 715, 730, n. 14; 684 N.W. 2d 278 (2004)(both citing M.C.L.A. 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7; 666 N.W. 2d 231 (2003)(citing M.C.L.A. 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Claypool,* 470 Mich. at 730, n. 14. Michigan's indeterminate sentencing scheme is therefore unaffected by the U.S. Supreme Court's holding in *Blakely. Drohan,* 475 Mich. at 164.

The decision in *Blakely* has no application to petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *See Blakely*, 542 U.S. at 304-05, 308-09. Because *Apprendi* and *Blakely* do not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's calculation of petitioner's sentencing guidelines range did not violate petitioner's Sixth Amendment rights. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *See also Brown v. Bell,* U.S.C.A. No. 07-2208 (6th Cir. March 7, 2008); *cert.*

17

*den.* 129 S. Ct. 129 (2008)(declining to grant a certificate of appealability to habeas petitioner on *Blakely* type claim).  Petitioner is not entitled to habeas relief on his fifth claim.

### D.  Claim # 6.  The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence presented at trial to establish that he was the perpetrator of these offenses.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002).  Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002)(internal citations omitted).  The scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry,* 208 F. Supp. 2d at 794.

Circumstantial evidence alone is sufficient to support a conviction, and it is not

necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted). Circumstantial evidence from which a reasonable inference of a habeas petitioner's guilt beyond a reasonable doubt may be drawn is constitutionally sufficient to sustain a conviction. *Crenshaw v. Renico,* 261 F. Supp. 2d 826, 832 (E.D. Mich. 2003). Moreover, eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown,* 408 F. 3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp. 2d at 648. Finally, the identity of a defendant can be inferred through circumstantial evidence. *Dell,* 194 F. Supp. 2d at 648.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner was the perpetrator of these crimes. Petitioner's fingerprint was found on a Dr. Scholl's bottle that was located only a few feet from the victim's body. There was no evidence that the fingerprint may have been placed there innocently, in light of the fact that petitioner testified that he had never made it past the doorway of the victim's home on the one occasion he had been there. In addition, blue paint was found on a hammer located in petitioner's residence that was consistent with the blue paint found on the boards that had been removed from the victim's home to gain access to the home during the break-in. Petitioner's aunt and uncle lived next door to the victim, establishing a further connection between petitioner and the crime. Moreover, witnesses observed petitioner driving an S-10 pick-up truck on the evening of the murder that looked similar to the victim's truck. Although petitioner told them he had borrowed the

19

truck from a relative, none of petitioner's relatives loaned him any vehicles, nor did any even own this type of a truck. Finally, and most importantly, petitioner admitted to a jail-house informant that he had been involved in a robbery on Granger Street and that the house contained a lot of clocks and watches. This would tie petitioner in with the murder and robbery, because the victim lived on Granger Street and was a jeweler, clockmaker, and watchmaker. Petitioner further told the informant when that the owner returned, that "they" panicked, the owner was hit with something hard, and that the owner's vehicle was taken. This would further support a finding that petitioner was the perpetrator, in light of the fact that the victim's truck was taken during the break-in.

Because there was sufficient evidence presented at trial for a rational trier of fact to conclude beyond a reasonable doubt that petitioner was the perpetrator of the crime, petitioner is not entitled to habeas relief on his sixth claim. *Dell v. Straub,* 194 F. Supp. 2d at 648.

### E. Claim # 15.  The remaining ineffective assistance of counsel claim.

In his fifteenth claim, petitioner contends that trial counsel was ineffective for failing to investigate, interview, and call his sister as a witness and in failing to obtain his mother's phone records, both to support his alibi defense.

As mentioned when discussing petitioner's procedurally defaulted claims, *supra,* petitioner did not file a timely motion to remand for an evidentiary hearing. Because petitioner did not file his motion to remand within the fifty six day period for filing an appellate brief under MCR 7.212(A)(1)(a)(iii) or within fifty six days of the final

20

transcript being prepared, petitioner's motion was untimely under MCR 7.208(B) and

MCR 7.211(C)(1). *see LaPlaunt,* 217 Mich. App. at 735-736.  As mentioned above, the

Michigan Court of Appeals denied petitioner's motion to remand. *People v. Yanna,* No.

258633 (Mich.Ct.App. August 11, 2005).

Because petitioner failed to present any evidence in a proper manner to the

Michigan courts to support his allegation that his trial counsel was ineffective, petitioner

is not entitled to an evidentiary hearing to further develop this claim in his habeas

proceeding. *See Cooey,* 289 F. 3d at 893; 28 U.S.C. § 2254(e)(2)(A)(ii)).  This would

include his claim that counsel was ineffective for failing to call his sister as an alibi

witness. *See Williamson v. Raney*, 157 F. Supp. 2d 880, 891 (W.D. Tenn. 2001).

In the present case, petitioner's counsel elicited testimony from his mother that he

was at home babysitting his sister at the time that the crime was committed. (Tr.

8/12/2004, pp. 152, 167-74).  Petitioner suffered no prejudice from counsel's failure to

present additional alibi witnesses, where counsel was able to present a "plausible, if

ultimately unsuccessful, alibi defense" through the testimony of another alibi witness.

*See Hess v. Mazurkiewicz,* 135 F. 3d 905, 909 (3rd Cir. 1998).  Because petitioner's alibi

defense was presented through another witness, the Michigan Court of Appeals'

rejection of petitioner's ineffective assistance of counsel claim was not unreasonable.

*See Chegwidden v. Kapture,* 92 Fed. Appx. 309, 311 (6th Cir. 2004).

Petitioner is unable to show that he was prejudiced by counsel's failure to call

petitioner's sister as an alibi witness for another reason.  Petitioner testified at trial that

his sister went to bed between 9 and 10 p.m. and his mother did not come home until after 1:00 a.m. (Tr. 8/19/2004, p. 84). Petitioner's mother testified that she came home around 1:15-1:30 a.m. Because there was a window of opportunity for petitioner to have committed the crimes after his sister went to bed, petitioner was not prejudiced by counsel's failure to call her as a witness. *See e.g. Fargo v. Phillips,* 58 Fed. Appx. 603, 607-08 (6th Cir. 2003). In particular, trial counsel would not be ineffective to fail to call as an alibi witness a person who was asleep at the time of the crime. *See Scott v. Hopkins,* 82 F. Supp. 2d 1039, 1050 (D. Neb. 1999).

Petitioner also contends that counsel was ineffective for failing to obtain his mother's cell phone records to establish that she called him on the night of December 18, 2003, to buttress his alibi defense. The Michigan Court of Appeals rejected petitioner's claim, because it appeared that petitioner's counsel attempted to obtain these records. *Yanna,* Slip. Op. at * 7. In any event, petitioner offers no argument as to how these cell phone records would prove that he was at home on the night of December 18, 2003. At best, they would only establish that his mother called the house on the night in question, but would not establish who was home or whom his mother spoke to. Because petitioner has failed to show that these telephone records would have aided his alibi defense, counsel was not ineffective for failing to obtain these telephone records. *See State v. Wolf,* 347 N.W.2d 573, 576 (N.D. 1984). Petitioner is not entitled to habeas relief on his fifteenth claim.

**F. Claim # 16. The cumulative errors claim.**

22

In his last claim, petitioner alleges that he was deprived of a fair trial because of cumulative error.  The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002).  Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.; See also Salters v. Palmer,* 271 F. Supp. 2d 980, 992 (E.D. Mich. 2003).

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner

23

states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*  A district court has the power to deny a certificate of appealability *sua sponte. See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen,* 156 F. Supp. 2d at 798.

## V. **ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/John Corbett O'Meara
United States District Judge

Date: June 26, 2009

24

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, June 29, 2009, by electronic and/or ordinary mail.


s/William Barkholz
Case Manager